Argued 30 December, 1902; decided 26 January, 1903.

## HOTCHKISS v. YOUNG.

[71 Pac. 324.]

CONSTRUCTION OF A GRANT OF A PRIVATE EASEMENT.

1. A grant of a private way to pass on foot or with animals and vehicles impliedly carries the right to construct a suitable roadway on the granted premises, and to keep it in repair, and to that end to dig and grade the soil as may be necessary.

NATURE OF A GRANT OF AN EASEMENT.

2. A grant of an easement carries such rights, and only such, as are reasonably necessary to a fair use of the premises conveyed, in view of the surrounding conditions; as, a grant of a private right of way over a space whereon a ditch has been constructed conveys the ground for the specified purpose, subject to the incumbrance of the water way, and the grantee must not unnecessarily interfere with it in preparing the space for his use.

UNREASONABLE USE OF EASEMENT.

3. Plaintiff conveyed to defendant a right of way over certain land along which plaintiff had previously constructed an irrigation ditch two feet wide. Thereafter defendant acquired an additional adjoining strip from another owner for his right of way, the whole being sixty feet wide, including the ditch. In times of high water the roadway would have been overflowed, unless raised above the level of the surrounding land, and defendant attempted to construct such roadway, about ten feet in width, with culverts, at a grade two feet higher than the adjoining land, including the construction of cross-embankments at right angles with the road, extending across plaintiff's ditch and entirely obstructing it. *Held,* that, as such cross-embankments were not necessary to the construction of a right of way of the width and height contemplated, plaintiff was entitled to restrain maintenance thereof.

From Harney: MORTON D. CLIFFORD, Judge.

Suit by Hull Hotchkiss against George W. Young to enjoin defendant from closing or otherwise interfering with an irrigation ditch. From a decree in favor of defendant, plaintiff appeals.          REVERSED.

For appellant there was a brief over the names of *Thornton Williams* and *Lionel R. Webster,* with an oral argument by *Mr. Webster.*

For respondent there was a brief over the name of *Biggs & Biggs,* with an oral argument by *Mr. John W. Biggs.*

MR. JUSTICE WOLVERTON delivered the opinion of the court.

The plaintiff is the owner of the N. W. ¼ of section 30, township 2 S., range 31 E., Willamette Meridian, in Harney

County, Oregon, and is also the owner of a right of way for the maintenance of a water ditch leading from Silvies River across the northern part of the N. E. ¼ of said section to a point near the northeast corner of his premises, for the purpose of conveying water to and upon such premises for irrigation and use of stock.     The right of way was conveyed to plaintiff by defendant George W. Young by deed of date August 24, 1893; he being then the owner of said N. E. ¼ of section 30.     Contemporaneously therewith, Hotchkiss and wife executed and delivered to Young a deed containing the following recital :

"WHEREAS, the said party of the second part [Young] is the owner of and residing on the N. E. ¼ of section 30, * * and desirous of obtaining a right of way from his said premises, thence west across the northern part of the land of the party of the first part [Hotchkiss] : Now, THEREFORE, this indenture witnesseth that the said party of the first part, for and in consideration * * does hereby grant, bargain, sell and confirm unto the said party of the second part, and unto his heirs and assigns forever, a right of way in and over a certain strip of land along the north line of the northwest quarter of section 30, * * for the said party of the second part, his heirs and assigns, and his and their servants and tenants, at all times freely to pass and repass on foot, or with horses, cattle, wagons, carts, sleighs, or other vehicles or carriages whatsoever, the said certain strip of land being of the width of thirty feet, and running due east and west and along said north line as aforesaid."

In the fall of 1890 there were some negotiations between the plaintiff and defendant relative to a right of way for the water ditch above alluded to, which were never reduced to writing, but resulted in an understanding or agreement whereby plaintiff was to have such right of way in consideration of a horse, which he then delivered to defendant.     Young denies that any such arrangement was agreed to, or that he ever agreed to accept or did accept a horse as a consideration for such right of way, while the plaintiff affirms by clear statement that such an arrangement was fully consummated.     Young admits, however, that the matter was talked of between him and the plaintiff about the time stated, and Phil Smith testifies that Young

told him in the fall of 1890 that Hotchkiss had given him
(Young) a horse for the right of way, so that there is here
strong corroboration of plaintiff's contention; and we believe
that the understanding or contract was arrived at as he states
it.   Subsequently a disagreement arose between the parties as
to their relative rights in the premises, and, defendant being
desirous of obtaining a right of way across Hotchkiss' prem-
ises, they finally concluded the agreement by which the deeds
above referred to were executed and exchanged.   Prior to the
verbal agreement a ditch had been constructed, extending
about halfway from Silvies River to the plaintiff's premises;
and water had been conducted through it, and flowed from it
over the natural surface to and upon such premises.

   This much was accomplished while Richards, the predeces-
sor of plaintiff, owned the land; and plaintiff began the use of
the water thereon in 1891, and has been so using it ever since.
In that year the plaintiff built his north fence thirty feet
south of the north line of his land; a fence having previously
been constructed on such north line by one Levins, who was an
occupant of the S. W. ¼ of section 19.   The reason for plain-
tiff so constructing his fence was that the county court had
previously established a county road sixty feet in width along
said line.   The road, however, was never opened and was
allowed to lapse.   In the spring of 1892, plaintiff constructed
a ditch, perhaps two feet in width, and about the same in
depth, along the north side of his north fence, and adjacent
thereto, extending westward to within 100 yards of where it
was subsequently deflected to the south; being within thirty or
thirty-five rods of his northwest corner.   Previously there had
been some furrows cut out, that served temporarily for con-
ducting the water on from that point.   In constructing this
ditch, a levee a foot or more higher than the level of the coun-
try was made along its south bank, by using the earth exca-
vated therefrom, in connection with some rock and boards at
the bottom of the fence.   Willows have since been planted and
are now growing along this levee, which serve to make it more

substantial and durable. Near the northeast corner of plaintiff's land a space of 200 feet or more was left open, and also another space of forty-five feet near the center, so as to give ample outlet in case of high water. This ditch was completed to the point where it now turns south in the fall of 1893, and in the fall of 1894 it was fully completed throughout its entire extension south for the distance of a quarter of a mile or more upon plaintiff's land. Water was utilized by means of this ditch during the time of its construction, and, as completed, it became an important part of plaintiff's irrigating system; and the levee served also for controlling the water during the flood season. Mr. Young insists that this ditch was not constructed until after he acquired his right of way from the plaintiff; but we are of the opinion that the facts as above stated have been established by a preponderance of the evidence, and that the ditch along the northern line of plaintiff's fence existed, in the main, and that water was being conducted therein by plaintiff for irrigating purposes, before he deeded the right of way to defendant. The plaintiff testifies to this, and his wife and another witness (Mr. Schuyler Whiting) positively affirm it, and there is other testimony in corroboration, while the defendant's testimony, except as he himself positively affirms that the ditch was not then constructed, is negative in character (that is, that the ditch was not observed by the witnesses produced), without positive statement that it did not then exist, so that we are induced to the conclusion above indicated upon this particular contention.

These conditions existing, the defendant acquired thirty feet additional as a right of way for like purposes off the south side of the S. E. $\frac{1}{4}$ of section 19, adjacent to the strip hereinbefore mentioned, thus giving him sixty feet, and shortly prior to the commencement of this suit he entered upon the construction of a roadway in the center thereof. This he attempted to do by excavating on either side and throwing the earth to a grade. His plan of construction included the throwing up of four embankments on the north and four on

the south of the road, opposite plaintiff's premises, at right
angles to the grade, reaching to the outer margin of the right
of way; those on the south to be extended across plaintiff's
ditch, and against his levee.  Four openings were also to be
made in the roadbed, to permit the water to pass from one
side to the other.  The avowed purpose of this plan of im-
provement was to control the water during the flood season, so
as to prevent its washing away or otherwise impairing the
roadbed.  From April on to August of each year, water from
melting snow comes down from the north in such quantities
as to cover much of the surface of the country, inundating the
right of way throughout nearly its entire distance,—at some
points to a depth of from one to two feet.  The incline is so
inconsiderable, however, that there is but little current at that
particular location; and the object was to impound the water
along in the excavations, allowing it to pass off gradually, and
thus prevent its washing away any part of the grade.  Two of
these embankments on the south of the grade were practically
completed, and closed up plaintiff's ditch entirely; and the
other two were under way when plaintiff brought this suit, the
purpose of which is to enjoin defendant from closing or other-
wise interfering with his said ditch, or the levee upon its south
bank, which he claims is imperiled by forcing the water against
it in such a manner as to overflow and break it down.  The de-
fendant being successful in the trial court, the plaintiff is ap-
pellant here.

1. The facts being resolved as thus indicated, the legal ques-
tions are few.  Plaintiff first insists that his deed to defendant
gives him merely the right and privilege of passing and repass-
ing on foot, or with horses, carriages, or other vehicles, and is
not a grant of the strip of land described for a right of way:
in other words, that the grant is limited to certain uses and
purposes, and not so general in its scope as to admit of abso-
lute appropriation to general road purposes.  The terms of
the grant are, of course, controlling in all cases of this nature.
The right to pass and repass with carriages and other vehicles

necessarily carries with it, by implication, the right to construct a roadway adapted to the purpose, and to keep it in suitable repair. The grant is of a private, and not a public, way; and the rights and privileges accorded must be determined upon that basis,—defined and limited by the terms of the grant. The attempt to establish a county road can be of no avail at this time, as any right acquired by the public through the order of the county court directing a road to be opened has been allowed to lapse, and the parties concerned here can therefore claim nothing by virtue of any existing public right or easement. Where the easement granted is a right of way, it accords to the grantee the right to use the surface of the soil for the purpose of passing and repassing and the incidental right of properly fitting the surface for that use. He may level, gravel, plow, pave, and even grade, and for the latter purpose dig up and use the soil so as to adapt it to the use accorded, and to the nature of the way granted or reserved: Washburn, Easm. (2 ed.), *188; Jones, Easem. § 817; *Thompson* v. *Uglow,* 4 Or. 369; *Atkins* v. *Bordman,* 2 Metc. (Mass.), 457, 467 (37 Am. Dec. 100); *McMillan* v. *Cronin,* 75 N. Y. 474.

2. Nothing passes as incident to such a grant, however, but what is reasonable to the fair enjoyment thereof,—that is, the reasonable and usual enjoyment and user of such a privilege; and the owner may nevertheless appropriate his land to such purposes as he pleases, consistent with the rights of the grantee, according to the nature of his grant: Washburn, Easem. (2 ed.), *189. MORTON, C. J., says in *Burnham* v. *Nevins,* 144 Mass. 88 (10 N. E. 494, 59 Am. Rep. 61): "These general principles are that a man who owns land subject to an easement has the right to use his land in any way which is not inconsistent with the easement, but has no right to use it in a way which is inconsistent with the easement, and that the extent of the easement claimed must be determined by the true construction of the grant or reservation by which it is created, aided by any circumstances surrounding the estate and the parties which have a legitimate tendency to show the intention of the parties." The rights of the respective parties to the ease-

ment are therefore more or less correlative and interdependent, and are to be determined somewhat by the circumstances attending the grant; in other words, it will be construed in the light of the conditions existing at the time: *Herman* v. *Roberts,* 119 N. Y. 37 (23 N. E. 442, 7 L. R. A. 226, 16 Am. St. Rep. 800).

Now, in the case at bar, when the easement was granted to the defendant it was incumbered by the plaintiff's ditch, in which he was conducting water from Silvies River for irrigating his premises; and the grantee must be considered to have taken the grant subject to this incumbrance, unless the space occupied thereby, or the soil supporting it, is reasonably necessary for the construction of a proper roadway for passing and repassing on foot, or with carriages and other vehicles.

3. It is contended by the defendant, however, that it is necessary to use the soil upon both sides of his roadway, the entire width of his right of way, for a depth of two feet, in order to construct it in such a manner as to put it above high water in times of flood. But this cannot be so, as, according to his own statement, his roadway is to be from seven to eight or ten feet in width at the most, and the height thereof above the present level is not to exceed two feet at any point, so that it is plainly to be seen that it would not take earth at the depth of two feet in what remains of the sixty-foot space to grade the roadway to the height named. Furthermore, it is very evident that there will be enough soil, without disturbing the ditch, to construct it in the manner desired. There is therefore but one conclusion at which we can reasonably arrive regarding the action of the defendant in grading his roadway, namely, that he is unreasonably interfering with the reserved rights and privileges of the plaintiff. The plaintiff has indicated by his testimony that he is perfectly willing that the defendant should use the soil within the right of way to any desired extent, so that it does not disturb his levee and prevent water from flowing along the north side of the fence, in order that he may be able to control and utilize it for irrigation upon the western portion of his premises; and it seems to us that there

is no possible need of interfering with the plaintiff's ditch, or, at least, with the flow of water in its accustomed way, in the proper and needful construction of defendant's roadway. The embankments extended across plaintiff's ditch, and those that were to be constructed are evidently unnecessary, and could be dispensd with without doing violence to the terms of the grant or to the easement accorded by it. We are therefore of the opinion that the injunction should be allowed, and the defendant restrained from interfering with the flow of water along and north of plaintiff's north fence as he has been accustomed to have it flow. The decree of the trial court will be reversed, and one entered here in accordance with this opinion.

REVERSED.