## C. B. WILLIAMS ET UX V. FRANK L. THOMPSON.

No. A-3754. Decided March 11, 1953.
Rehearing overruled April 22, 1953.
(256 S.W. 2d Series 399)

*Tilley, Hyder & Law* and *Thos. H. Law,* all of Fort Worth, for petitioners.

The Court of Civil Appeals erred in holding that the rule that an owner of land is entitled to have it supported in its natural state by the adjoining land has no application and therefore that respondent was not liable to petitioners for destroying the lateral support to their land. McDaniel Bros. v. Wilson, 45 S. W. 2d 294; Home Brewing Co. v. Thomas Colliery Co., 274 Pa. 56, 117 Atl. 542; 2 Thompson on Real Property 219.

*Cantey, Hanger, Johnson, Scarborough & Gooch, J. A. Gooch* and *Peveril O. Settle, Jr.,* all of Fort Worth, for respondents.

In reply to contentions of petitioners cite Texas P. & L. Co. v. Casey, 138 S.W. 2d 594; Lone Star Gas Co. v. Hutton, 58 S.W. 2d 19.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Petitioners C. B. Williams et ux. sued Frank L. Thompson, respondent, for actual and exemplary damages for cutting down the natural slope of a roadway, thereby depriving petitioners' adjacent land of lateral support and exposing it to sloughing and erosion.

After trial without a jury, the trial court gave petitioners judgment for $3,500 actual damages and $500 exemplary damages. The Court of Civil Appeals reversed the judgment and rendered it for respondent. 249 S. W. 2d 238.

River-Crest Company owned 629½ acres of land about three miles west of Fort Worth. On June 6, 1911, it executed a map or plat subdividing this land into 65 blocks, all of which, together with the streets, roads and alleys, "are correctly delineated and shown on said map." The instrument of dedication, among other things, recited: "And it (the dedicator company) desires to and does hereby dedicate to the present owners and all future owners of blocks numbered from eighteen (18) to sixty-five (65) inclusive, their heirs, successors and assigns, the streets, alleys and roads running through said property, as is shown on said map, as *private ways for the exclusive use,*

*benefit and convenience of said owners, their successors and assigns, it being not intended to make said streets roads and alleys public throughfares* (sic), *but to retain the exclusive use and control thereof for the benefit of future owners of said property, as aforesaid."* (Italics ours.)

The roadway involved in this suit was described as follows: "The roads, streets and alleys, above referred to, are for the purpose of particularity, more carefully described as follows: (a) Beginning at the South West corner of Block 30, and the South East corner of Block 25, at the point of intersection with Alta Avenue and running thence in a Northerly direction 30 feet wide to the intersection of a 30 foot road, shown on said plat, with Blocks 30, 32, 33, 34, 35 and 36 lying to the East and Blocks 24 and 25 to the West."

On June 9, 1911, this instrument of dedication with plat attached was filed for record with the County Clerk of Tarrant County and was duly recorded on June 20, 1911.

Subsequently petitioners became owners of a part of Block 25 and respondent of a part of Block 24. Block 24 joined Block 25 on the north; and the roadway described in the dedication as 30 feet wide ran along the east side of both blocks attaching to the east 15 feet of each. This 30-foot strip, later known as "Hidden Road", was the only road by which vehicular traffic could reach respondent's property in Block 24, but it remained unimproved until March, 1951, when respondent requested proper authorities of the City of Fort Worth to open and grade it, stating to them that it was a "public road". Thereupon, at its own expense, the City did open and grade the road to a width of 18 feet from Alta Drive, along Block 25 to respondent's property in Block 24. The trial court found that the width of 18 feet was so established by the City and "was so located as to leave, within the dedicated limits of the street, at least eight feet between plaintiffs' eastern property line and the western edge of the improved portion of the street"; that "at least one of the factors considered by the City in establishing the width and location was the fact that plaintiffs' property was higher than the grade of the street, and that the width and location as established would place the western edge of the street at approximately the toe of the slope from plaintiffs' property line down to the street level, thus leaving a natural slope, preserving plaintiffs' lateral support, and preventing the crumbling, erosion and sloughing of plaintiffs' land which would result from a removal of such lateral support."

Because he regarded this strip of 18 feet width so improved inadequate for traffic along Hidden Road, and without the consent of, or notice to, either the City or petitioners, respondent, in April, 1951, widened the road to the full width of 30 feet described in the dedication and plat of River-Crest. With a bulldozer he cut into the slope from Williams' eastern property line to the western edge of the roadway of 18 feet improved by the City the month before. This cut came to within a distance of from one to five and a half feet of petitioners' property line and left a vertical cut at the deepest point of 7 feet and five inches. However, respondent cut on the grade previously fixed by the City in cutting out the 18 feet.

Since that work the earth between Williams' property line and the widened roadway has eroded, crumbled and sloughed and, unless proper lateral support is supplied, the slope will consume substantial portions of Williams' land.

The trial court found that a retaining wall to replace the lateral support so removed would reasonably cost $3,500; that the petitioners are entitled to recover that sum as actual damages; that in so widening Hidden Road, respondent "acted wilfully, wantonly and with complete and utter disregard of the rights" of petitioners, thus entitling them to exemplary damages in the further sum of $500.

The trial court concluded as a matter of law that Hidden Road, under the original dedication, was a private way; that in inducing the City of Fort Worth to open and improve it at public expense and acquiescing therein, respondent is estopped to assert that it is not a public street, which estoppel results, in effect, in an implied dedication of respondent's interest in the street; and, finally, had respondent not so estopped himself, petitioners would still be entitled as against respondent to lateral support for such of their property as abuts on Hidden Road even as a private way.

The Court of Civil Appeals disagreed with these conclusions, and the cause is here on three points of error, namely, the Court of Civil Appeals erred (1) in holding that "the roadway was not impliedly dedicated by estoppel as a public street", (2) in holding inapplicable the rule that an owner of land is entitled to have it supported in its natural state by the adjoining land, and (3) in stating, in effect, that it was necessary for respondent to widen the roadway to make it passable, at least for two-way traffic.

■ In point No. 1, petitioners assert that the Court of Civil Appeals erred in holding that the roadway was not impliedly dedicated by estoppel as a public street, because "(a) Respondent told the City authorities it was a public street. (b) Respondent induced the City to open and grade it. (c) The City opened and graded the street with public funds. (d) The other property owners consented to and acquiesced in the City's opening and grading the street."

As to respondent's negotiations with the City authorities to get the City to open Hidden Road, the City's street superintendent, H. H. Hester, testified that respondent "originated the request to have that road improved"; that thereafter Hester and the City's director and assistant director of public works inspected the road, discussed its proper width and decided "to try to work out about an 18 foot roadway"; that the City's engineer later fixed the western line of the portion of Hidden Road which the City was going to improve and fixed the grade to be followed in cutting out the road; that Hester then cut out the 18 feet on the lines and grades fixed by the engineer; that respondent "was very anxious to get the road improved. He said he had to get the road fixed so that he could get some materials in to some houses that he intended to construct, and as I recall he said it was a public road and the would like to get it open as quickly as possible."

As to consent and acquiescence by the other abutting easement owners in this project, it is significant that the trial court, in his careful and detailed findings of fact, made no mention whatever of any such consent or acquiescence; all he said was that "the defendant acquiesced in the opening and improvement of Hidden Road by the City and made no objection thereto." That the trial court meant to limit implied dedication to respondent only is clearly shown by his conclusions of law, e. g., "By his acts in inducing the City to open and improve Hidden Road at public expense, and acquiescing in such improvement, defendant is estopped to assert that Hidden Road is not a public street"; "such estoppel resulting, in effect, in an implied dedication or common-law dedication of defendant's interest in the street, plaintiffs, as abutting owners in the same subdivision, are entitled to take advantage of and urge such estoppel"; and "The road being, as against defendant, a public road, plaintiffs were entitled, as against defendant, to lateral support for that portion of their property abutting on Hidden Road", etc.

Petitioners say in their application that this language limit-

ing implied dedication to respondent "was perhaps unfortunate"; that it was used for "emphasis"; that the correct conclusion is that "all of the abutting owners and all other parties, too, now are bound by this implied dedication.". "They (respondent's co-owners) did not set the ball to rolling, but neither did they stop it. The acquiesced in the City's spending money in opening and improving the street. They sat idly by and consented thereto, and this too is the basis for an implied dedication. As to *all*, then there was an implied dedication. They cannot now be heard to deny that the street is public." We have found no evidence to support these assertions.

Therefore, since the City of Fort Worth is not a party to this suit and there is no claim that the City has ever asserted any claim to dominion over Hidden Road since the 18-foot strip was graded and cut out; and since there is no evidence that the other co-owners of the private road consented to, or had anything to do with, whatever respondent said or did to get the City to cut out and grade the 18-foot strip, we agree with the Court of Civil Appeals that Hidden Road was not impliedly dedicated as a public street.

Tribble v. Dallas Ry. & Terminal Co. (Civ. App.), 13 S. W. 2d. 933, error refused, urged by petitioners, does not support their claim of implied dedication by estoppel. Tribble et al. sued, claiming a perpetual private easement in a street abutting their property. In deeds from the common source it was recited that the street "is not a public street and has not been dedicated to public use, but that the same is the private property of the grantor, it being expressly understood, however, that grantee herein is hereby conveyed a perpetual easement over, along and upon said strip * *." This was "prior to November 4, 1909". On November 24, 1909, the same grantor conveyed the land to one Kendall, who, on the same day, executed a formal dedication of the strip and other streets marked out on an attached map " 'to the public use forever.' " In 1918 the area became a part of the City of Dallas, which assumed control of the streets and worked, graded and drained them. The parties stipulated that later, on petition of *the* property owners abutting on the strip of land in controversy, the City instituted paving proceedings, duly advertised for and received bids and awarded the contract; that the contractor then paved the street, whereupon the City passed an ordinance levying assessments against the respective property owners for their share of the improvement cost and fixing liens in favor of the contractor against them. In view of that

affirmative action by all the co-owners of the easement, it was properly held that they were estopped to say that they had not thereby dedicated their former interests in the land to the public for use as a street.

Petitioners also quote from City of San Antonio v. Grandjean, 91 Texas, 430, 41 S. W. 477, 44 S. W. 476, language to the effect that a landowner may orally dedicate to the use of the public a way over his land, and that, when accepted, the dedication is complete and cannot be revoked. We do not question that holding, but its effect on the issue at bar must be weighed in the light of the facts of the case, which were: The Grandjeans, husband and wife, owned a parcel of land which the City desired to acquire to use as part of a street; the City filed a condemnation suit against the husband alone, in which their damages were assessed; the money to compensate the Grandjeans was then tendered but they refused it, whereupon it was deposited to their credit in a bank; later the husband accepted half the money and shortly the wife took her half and use it for her own purposes; later the Grandjeans were divorced, after which Mrs. Grandjean filed suit to recover the lot, alleging it was her separate property when the City sought to condemn it. So it was held that she had an election to take the money or refuse it and force a new assessment in a suit in which she would be a party; that she did elect by taking the money, therefore she had no case. Obviously that holding has no relation to the case at bar.

■ Petitioners' second point is that the Court of Civil Appeals erred "in holding inapplicable the rule that an owner of land is entitled to have it supported in its natural state by the adjoining land, and therefore that respondent was not liable to petitioners for destroying the lateral support of their land."

There are many American and English decisions on the doctrine of lateral support. See, for instance, the annotation following Guillet v. Livernois, 112 A. L. R., 1300. And they may be confusing unless the reader is careful to note in each case the character and extent of ownership of the lands enjoyed by the parties to the suit. This is shown by the language of petitioners' point in which they assert the rule to be that *an owner of land* is entitled to have it supported in its natural state by the *adjoining land*. It is undoubtedly the rule in this state as well as in most other jurisdictions that each of two adjoining landowners is entitled to the lateral support of the other's land;

this right is one of property necessarily and naturally attached to and passing with the soil. 1 Thompson On Real Property, Sec. 545, p. 654, citing Simon v. Nance, 45 Texas Civ. App. 480, 100 S. W. 1038, which describes the right as "absolute".

But, as petitioners recognize in their argument, the parties to this suit are not adjoining landowners. What we have is a respondent who is one of several owners of an easement in Hidden Road and petitioners who are owners not only of the adjoining land but of the fee title to the 15 feet of Hidden Road which respondent was improving when he destroyed the lateral support to petitioners' adjoining land.

In determining respondent's right to open Hidden Road as he did, it must be remembered that his right, if it exists, does not arise from necessity or convenience but comes from an express grant in the recorded dedication of River-Crest—a grant which appears in petitioners' chain of title and of which, therefore, they were charged with notice and must be held to have agreed to .The result is that respondent's rights are paramount, to the extent of the grant, to those of petitioners, the owners of the land. See Murray v. Dickson, 57 Tex. Civ. App. 620, 123 S. W. 179, no writ history, which holds also that the owner of a way, whose limits are defined in the grant, has not only the right of free passage over the travelled part but also over such portions of the way as he thinks proper or necessary.

That is the holding by the Supreme Judicial Court of Maine in Rotch v. Livingston et al., 91 Me. 461, 40 Atl., 426, wherein the two owners of a tract of land joining the bay at Bar Harbor executed partition deeds, in which a private road was created. The divisional line of the partition was declared to be "the middle of a road fifty feet wide to be laid out one-half over the land of each of the parties hereto" for a length of 1100 feet, with the grantors declaring that they "mutually reserved and conveyed to each other, and the heirs and assigns of each, 'the right to pass and repass in and over, and to lay drains and water pipes under that part of the granted premises which is included in said proposed road.' " A plan of this division showing the divisional line and the proposed private road 50 feet wide and 1100 feet long was attached to the deeds and recorded with them. In all subsequent deeds the grantor's rights and duties in this private road were transferred to his grantee. The road remained in its natural state until one Kennedy became owner of the land south of the road and Rotch et al. of that on the north side.

Having built a costly residence on his lot, Kennedy desired to have the road opened and improved, so he called on Livingston, his grantor, "to have it done according to his obligations assumed". Livingston had conferences with "those bound to build the road" as to its width, grade, surface and cost. Finally these parties made a written contract with a road builder to construct a roadbed 30 feet wide through the middle of the 50-foot way of a specified character and grade, which involved a cut four feet deep in front of the lots of Rotch et al. The roadway was constructed and paid for by the signers of the contract. Later Kennedy decided that he wanted the entire 50 feet made into a roadbed, and again called on Livingston to do it. Livingston widened the road on the south side and next to Kennedy's land of the same character and grade as had ben used in improving the 30 feet. He then proposed, at his own expense and in the same manner, to cut out the roadbed on the north 10 feet. This would result in cutting down the surface 4 feet in front of the lots of Rotch et al. and bring the roadbed 10 feet nearer their residences. Denying the right of Kenedy to cut out the 10-foot strip in front of their lots as well as his right even to pass over the surface of that strip, Rotch et al. filed suit to enjoin Livingston from doing the work.

Summarizing the claims of Rotch et al. as a contention that the original 30-foot road "already made fully answers every demand of necessity or reasonable convenience", and confines the rights of the defendants to that road, and frees the 10-foot strip, for the present at least, from any easement even of mere passage, the court points out that Kennedy and the other easement owners hold by express grant of a 50-foot strip and not by implication from necessity or convenience. Then it says that the easement owners, by express terms of the grant, were given the full right to use the entire width of 50 feet and were not limited to use only such part of it as might be necessary or convenient. Therefore, it holds that when the grant gives the easement owner the right to use a specified width as a road, "it follows logically, in the absence of restrictive words in the grant, that the grantee can fit the entire width for use. His right to make a road is as wide as his right to a road so far as width of road is concerned"; that any owner of the easement can, at least at his own expense, fit the entire granted width for his use, "at his reasonable discretion so long as he does not unnecessarily impede any other co-owner in his use." In connection with this last statement, the court observes that there is no evidence that "plaintiffs' use of the way itself would be substantially

abridged or hampered by the proposed widening" of the way, "at the same grade, from 30 to 50 feet."

After these broad pronouncements, the court adds this: "We may say, also, that it is not made clear to us that the lots and residences of the plaintiffs (Rotch et al.) would be substantially injured in use or value by cutting down the 10-foot strip to the level of the present wrought road." This statement was made in answer to the argument of Rotch et al. that although Kennedy might have the right to cut out the 10-foot strip in question, he had no right to cut it 4 feet deep in front of their property because such depth was unnecessary to Kennedy's use of the road and would injure the value and convenient use of their own lots.

In Doan v. Allgood et al., supra, 310 Ill., 381, 141 N. E., 779, the Supreme Court of Illinois held that the grantee of a private road easement may make such grades, etc., as may be necessary to enable him to make use of the way in accordance with the grant, *"provided in doing so he does not injure the servient estate."* We regard this last proviso as too board to constitute a valid limitation on a private road easement owner and we do not approve it. This applies also to the language of the Rotch-Livingston case quoted in the paragraph next above if it can be interpreted as an absolute non-injury limitation.

Other authorities which recognize the easement owner's right to improve and use the full width of a granted roadway declare he must not "unreasonably", or "unnecessarily" or "negligently" injure the servient estate. For example, in Guillet v. Livernois. supra, 297 Mass. 337, 8 N. E. 2d., 921, 112 A. L. R., 1300, that Supreme Judicial Court of Massachusetts says the easement owner must exercise this right "with due regard to the rights and interest of others."

We need not decide whether the limitation against an "unreasonable" or "unnecessary" injury to the servient estate or one arising from want of "due regard to the rights and interest of others" is sufficiently definite to be effectively applied. Be that as it may, although the case involves a different fact situation, a proper, practical and workable limitation was fixed in Lone Star Gas Co. v. Hutton et ux. (Com. Ap.), 58 S. W. 2d., 19.

The Huttons sued the gas company for damages to their

land and matured crops occasioned by the gas company in constructing its pipe line and in diverting the natural flow of water in certain streams, damaging their land, crops and ditches. The company answered that the alleged injury was not caused by its negligence but by means beyond its control. In a written conveyance the Huttons gave the company the right to construct, maintain and operate its lines across their land. The court held that if the company exercised the rights conferred in the instrument without negligence, no damages were recoverable. We adhere to that rule.

■ So we hold that respondent had the right to grade, cut out and use the entire 30 feet of Hidden Road, provided that in doing so he did not negligently destroy petitioners' lateral support.

Of course, the burden was on petitioners to show such negligence, but, as pointed out by the Court of Civil Appeals, they neither pleaded nor proved negligence in that respect. While the trial court did find that respondent "acted wilfully, wantonly and with complete and utter disregard of the rights" of petitioners, in response to petitioners' allegation that "in undercutting plaintiffs' property and depriving them of lateral support * * * defendant acted with such gross recklessness and wanton disregard of their rights", both the allegation and the finding were in connection with petitioners' prayer for exemplary damages, and had no relation whatever to actual damages.

■ Like the Court of Civil Appeals, we find no evidence of negligence. To say that loss of lateral support shows negligence in cutting out Hidden Road would be but to beg the question. Nor is negligence shown by the fact that respondent's agent refused to stop cutting out the strip in spite of a vigorous protest by Mrs. Williams.

The third point of error is that "the Court of Civil Appeals erred in stating, in effect, that it was necessary for respondent to widen the roadway to make it passable, at least for two-way traffic." Since we have held that respondent's right to open and use Hidden Road to its full thirty feet arises from an unqualified grant and not from necessity, the point becomes immaterial.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 11, 1953.

Associate Justice Culver not sitting.

MR. JUSTICE WILSON dissenting.

I respectfully dissent for the reason that this does not seem to me to be a negligence situation, but rather a question of determining the rights granted by an easement. The complaint is not about the manner in which the work was done.

I agree that the easement was the dominant estate and that respondent Thompson had the right to use his dominant estate. However, he must use it so as not to injure unreasonably the adjacent property. This would be true if he had acquired the fee to the road strip. Why should it not apply to an adjacent easement—less than the fee? And does it make a difference that the adjacent fee extends to the middle of the road? I see no reason why it should. If the easement owner wishes to cross a gully with his road he should put in a culvert so as not to back water over the adjacent property. The fact that the easement is the dominant estate would not give him the right to damage the adjacent fee by backing water over it. I cannot see that there is any question of negligence involved. As I understand the majority opinion, an act done negligently (without due care) imposes liability while the same act done deliberately escapes liability. This brings the distinction down to the mental attitude of the actor, which, in my opinion, should be immaterial. Does it make a real difference whether the operator of a bulldozer carelessly cuts away lateral support while doing something else—say, just to get dirt for a fill, or why he does it at all? The overt act should govern.

The case of Lone Star Gas Co. v. Hutton, 58 S.W. 2d 19, volved a pipe line easement. The court said:

"* * * If grantee (under an easement) exercised the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable. * * *"

"To hold in the face of the provisions contained in the deed that the gas company was not permitted to enjoy those privileges free from damages necessarily incident to the enjoyment of those rights, and permit the assessment of damages not due to the result of negligence or care on its part, would be a violation of its legal rights. The burden rested upon Hutton and wife to allege and prove that the gas company was guilty of negligence in this respect."

I do not question this statemest of the law, but that does not solve the case at bar. In that case the company contended that the injury was caused by "means beyond its control." Here the injury was caused by a deliberate act of the defendant. And the whole question is whether the right to cut away lateral support was a right "conferred in the conveyance."

I would not resolve this question by the negligence formula but upon the basis of whether or not the facts at bar were a reasonable exercise of the rights granted in the easement. As for myself, I would hold that a retaining wall or natural retainer (grass sod) to support the sides of a cut is necessary for there to be a reasonable use of a road easement. Some years ago it might not have been considered reasonable to require that in constructing a road the naked sides of a cut be protected from washing and sloughing by a blanket of sod or other retaining device. Today this is required on virtually all public construction. What is unreasonable in one generation may be very reasonable in the next. If the respondent wished to make a cut in order to use his dominant estate, he should have covered the exposed cut.

Opinion delivered March 11, 1953.

Rehearing overruled April 22, 1953.