Argued May 2, affirmed as modified June 2, 1960

# KENDALL *v.* CURL ET AL

353 P. 2d 227

*Joseph Larkin,* Portland, argued the cause for appellant. With him on the brief were James C. Dezendorf and Koerner, Young, McColloch & Dezendorf, Portland, and Ralph Currin and Currin & French, Pendleton.

*John H. Kottkamp,* Pendleton, argued the cause for respondent C. C. Curl, Sr. *Thomas M. Mosgrove,* Pendleton, argued the cause for respondents Richard Curl and Nell Curl. With them on the brief were Fabre, Collins & Kottkamp and Cunha & Mosgrove, Pendleton.

Before McAllister, Chief Justice, and Warner, Perry, Sloan, O'Connell, Goodwin and Millard, Justices.

GOODWIN, J.

The plaintiff, James Kendall, declined to plead further after the Circuit Court for Umatilla County sustained a demurrer to his second amended complaint, and appeals from the judgment entered for the defendants with costs.

The demurrer rests upon the proposition that the Oregon statutes on livestock running at large create immunity as a matter of law in favor of the owner of a horse which strays onto an interstate limited-access highway and thereby causes damage to a motorist using said highway. The circuit court held that because Umatilla County is designated by law as an open-range county a complaint purporting to state a cause of action at common law for negligence is insufficient in this case.

Plaintiff alleged that as he was driving on U. S. Highway 30, four miles east of Pendleton, during the hours of darkness, a horse owned by the defendants suddenly ran onto the highway, thereby causing a collision from which plaintiff received injuries. He further alleged that the defendants were negligent in failing "to exercise reasonable care in restraining or otherwise preventing the horse from being on the main public highway unattended in the night time with knowledge that such highway was heavily traveled by automobiles * * *." Plaintiff also alleged that the defendants knew or should have known that the immediate area through which the plaintiff was driving was fenced on both sides of the road and that, accord-

ingly, plaintiff and similarly situated motorists had the right to rely on such fences, and could assume that livestock would not be running at large on the highway.

While we have abridged the pleading, the above statement of the allegations is sufficient for the question at hand. Motions were made to strike portions of the pleading, but no motions were interposed to make the second amended complaint more definite and certain. The demurrer admits the facts well-pleaded, for the purpose of this appeal.

The role of the court in the instant case is restricted by statutory enactment. The legislature has entered the field, and has declared the policy of the state with regard to the rights and duties of those who keep cattle and horses. Our duty is to review the circuit judge's ruling under the existing law of Oregon, including statutory law.

If the accident had happened 62 days earlier, the complaint would have stated a cause of action against the horse owners as a matter of law, because Umatilla County was previously a livestock district. Section 32-1571, OCLA, and subsequent enactments. But on October 31, 1957, when the horse made its unhappy encounter with a 1956 Ford sedan, the statute then in force (ORS 607.051) provided:

"* * * that no livestock districts exist in Umatilla County." Oregon Laws 1957, ch 604, § 34 (h).

ORS 607.008 provides that all incorporated cities are livestock districts. Thus the quoted section of the 1957 act means that no livestock districts exist outside cities in Umatilla County. The accident happened outside any incorporated city. The site was

"open range" as a matter of law, even though, as a matter of fact, both sides of the highway were fenced for some distance east and west of the accident scene.

The defendants argue that since the horse was at large in an area where the owner had a legal right to permit his stock to be at large, the owner is clothed with absolute immunity for any damage the horse might cause. It is not necessary to hold that there is absolute immunity, but it is sufficient to consider whether defendant violated any legal duty.

The legislature has seen fit to treat public highways specifically and at length. For example, ORS ch 607 contains sections which forbid livestock running at large on highways in Jackson, Klamath, Wasco, Linn, Washington, Jefferson, and parts of Polk, Tillamook, Benton, Lane, and Lincoln counties. The extensive amendments of the code which were made in 1957 demonstrate that the subject of where and how livestock would be permitted to range at large came in for more than routine legislative attention. The legislature recognizes that confusion exists in the matter of livestock districts (Oregon Laws 1957, ch 604, § 29), and therefore the state Department of Agriculture is given authority to hold hearings (§ 30) in various counties (specifically excepting by § 34, however, Umatilla) for the purpose of establishing boundaries. Thus, Umatilla County is not only free from restraint on the running at large of livestock, but the legislature pointedly instructed the Department of Agriculture to maintain a hands-off policy.

██ In numerous parts of the state which have been designated as livestock districts, the act or omission which permits an animal to run at large is a violation of a legal (statutory) duty and hence, if it results in harm, is negligence as a matter of law. In those por-

tions of the state where an owner has the legal right to range his stock at large, such activity is not a violation of a statutory duty, and is not, as a matter of law, negligence. The question then becomes: Is absence of negligence as a matter of law equal to immunity as a matter of law?

The plaintiff contends with a battery of well-reasoned cases from other states that the legal right to range animals at large is limited by a modern common-law duty to act as an ordinarily prudent man in the same or similar circumstances. This is the holding of *Galeppi Bros. v. Bartlett*, 120 F2d 208, where the cattle roamed on unfenced government land. Plaintiff urges that while the husbandman has the legal right to turn out cattle and horses, this right may be limited by duties arising from other operative facts. Such facts might include the presence of children playing in a nearby acreage or the speed and volume of traffic on a nearby road. The question of actual negligence, under the plaintiff's theory, is then for a jury to decide. The plaintiff is not claiming that the presence of the horse in the road constituted negligence as a matter of law. Plaintiff says presence on the road is merely one fact which, with other facts alleged in the complaint, places the livestock owner under a duty of reasonable care. If the case were tried, plaintiff argues, a jury would consider all the evidence, that of the defendant with that of the plaintiff, and decide ultimately whether the plaintiff was injured through the failure of the livestock owner to exercise due care. Cases tending to support plaintiff's theory may be found in Annotation, 59 ALR2d 1328.

At common law in England there were two separate rules relating to cattle escaping from the land of the owner. (1) If cattle trespassed onto the land

of another, the owner of the cattle was liable in an action of trespass for damage done. (2) If an animal wandered onto a highway, the owner was not liable for damage, unless he had prior knowledge of a dangerous propensity in the beast.

Oregon rejected the first common law rule in *Campbell v. Bridwell,* 5 Or 311, where this court said at page 313:

> "It is the opinion of the Court that the common law rule, that every man is required to keep his cattle within his own close, under penalty of answering in damages for all injuries arising from their running at large, is not in force in this State. The statute of 1870 [fencing-out law] is directly in conflict with and repugnant to that rule  *  *  *."

Such has been the law since, except in livestock districts. See Note, 24 OLR 63, 66.

The second rule stated above has not been rejected and undoubtedly exists in Oregon as part of the common law, in the remaining portions of the state not covered by livestock district laws.

The plaintiff argues that Oregon's open range law is intended solely to protect the livestock owner from liability for damage to a neighbor's crops and was not intended to afford immunity from liability to motorists or other members of the public. However, it must have been apparent to the legislature that permission to range cattle at large would include within designated open-range lands those lands traversed by roads and highways. We do not believe that the plaintiff's contention can be read into the range laws in view of the rather detailed attention given the subject by the legislature.

The rule of nonliability for horses straying on

highways and colliding with vehicles has been kept current in England with the case of *Searle v. Wallbank* [1947] 1 All E R 12. In that case, a cyclist collided with a straying horse on a country road during the hours of darkness early in the morning. The horse had escaped through a gap in a hedge. The House of Lords heard the case and treated it as *res integra*. After first concluding that there was no duty of a farmer to fence his land adjoining a road, Viscount Maugham determined that the farmer owed no duty to the motorist to keep his horse off the road.

Lord du Parcq, who concurred, stated that "* * * The motorist must put up with the farmer's cattle: the farmer must endure the motorist." This is the common law rule and the rule urged by defendants under Oregon's open range laws.

The trend in the United States is the other way. See cases collected in Annotation, 59 ALR2d 1328, supra. The briefs of counsel point out that California has found that facts now existing impose a duty of due care on the owners of livestock, e.g., *Summers v. Parker et al,* 119 CalApp2d 214, 259 P2d 59; *Jackson v. Hardy,* 70 CalApp2d 6, 160 P2d 161; and *Galeppi Bros. v. Bartlett,* supra.

If there were no legislation on the subject, Oregon would be free to adopt a modern common-law rule imposing a duty of due care on the owners of animals.

The legislature has said that stock may range at large on the highways of Umatilla County. Until 1921, Umatilla County was open range. Oregon Laws 1921, ch 413, created a livestock district for the whole county, and thus it remained for 36 years:

"It shall be unlawful for any person who is the owner of, or who has custody, possession or control of, any live stock, viz: horses * * *, to

permit the same to run or be at large within the county of Umatilla and state of Oregon; * * *." Section 32-1571, OCLA.

After further amendments from time to time, Oregon Laws 1947, ch 529, § 8, repealed § 32-1571, OCLA, but § 7 of that chapter saved the Umatilla livestock district, and so it remained until Oregon Laws 1957, ch 604, § 34, eliminated it.

■ If cattle and horses have a right to be on the road, their owner is not negligent in allowing them on the road.

Numerous persons are injured when automobiles strike animals *ferae naturae*. Signs along the highways abound with warnings of deer. When such mishaps occur, there is no one to sue. The same result is required by the legislative refusal to hinder the roaming of livestock in certain portions of the state.

■ The livestock district laws, by omission of specified areas, afford immunity to the open-range stockman against claims for damages arising solely out of ownership and permission to run at large. Plaintiff, however, contends that he had the right to have a jury pass on the question of actual negligence, or fault on the part of the owner notwithstanding the statutory designation of the locus as "open range." Fault requires a breach of some duty.

Plaintiff seeks to allege a breach of some other duty by saying that if a stockman suffers a horse to be on the highway under the conditions alleged, these facts, if proven, would justify a jury in finding that the conduct was not that of a reasonable, prudent man in the circumstances.

The demurrer, for the purpose of measuring the rights and duties of the parties, admits that the animal was on the road, that the road was fenced on

either side, that the owner of the animal knew or should have known that the highway was heavily traveled and that the owner knew of the inability of animals to cope with rapidly moving automobiles at night. The only allegation charging negligence on the part of defendants is as follows:

"That the negligence of the defendants consisted of the failure to exercise reasonable care in restraining or otherwise preventing the horse from being on a main public highway * * *."

Thus far, the allegation charges nothing improper under open-range conditions. The complaint then goes on to allege that the defendants had knowledge that if a horse did get out it might cause damage. In essence, the complaint charges that the defendants were negligent in permitting a horse to do what the legislature has specifically stated that such animals may do. The complaint alleges knowledge, or appreciation, of potential harm, but that same knowledge of potential harm was considered by the legislature, weighed in the balance, and found wanting, as far as Umatilla County is concerned. The same legislature reached the opposite result in nearby Wasco County.

The allegation that the highway was in fact fenced by persons unknown affords the plaintiff no assistance in this case. There was no duty to fence, and there is no pleading that would connect the defendants with existing fences in any event. The argument that once having undertaken to fence, even without a duty to fence, the defendants would thereby assume a duty to fence wisely and well remains unconvincing in the face of specific legislative declarations that there is no duty to fence at all. There being no duty, there is no breach of a duty, hence no fault, and no liability. Until the

legislature says otherwise, the language of Lord du Parcq, supra, describes the plight of both motorist and stockman in Umatilla County.

■ The demurrer was properly sustained because the complaint did not state a cause of action for liability based on fault or breach of any duty.

In entering judgment for the defendants below, the trial court allowed an item of disbursements for a discovery deposition. Timely objection was made to the cost bill, and the matter is before this court on the appeal from the judgment.

This court has not previously considered the matter, but other courts have refused to tax as "necessary disbursements" the discovery depositions customarily taken by counsel for both parties in most litigation. *Hansen v. Bradley*, 114 F Supp 382 (DC Md 1953); *Kenworthy v. Kleinberg*, 182 Wash 425, 47 P2d 825 (1935); *Victor Products Corp. v. Edwards*, 172 Wash 1, 18 P2d 1045 (1933).

■ Our statute permits the recovery of the "necessary expenses of taking depositions." ORS 20.020. Necessary depositions are depositions to preserve testimony. A discovery deposition, which may be necessary for a few pages, usually runs to an extent which is a luxury. Such a deposition can become a necessity if a witness disappears.

■ Discovery depositions were commented upon by the trial judge in *Hansen v. Bradley*, supra, at 385, 386. He observed that such transcripts often run to considerable length; counsel commonly ask one or two questions from them, attempting to show some trivial discrepancy in a witness' prior statement; and that their net effect, more often than not, is to prolong the trial. While counsel have the right and duty to use such depositions with discrimination, there is no rea-

son of public policy to support deposition-taking by carte-blanche accumulation of costs on the chance that the loser will pay.

■ The trial judge, who is in the best position to decide whether a deposition is, or has become, necessary, should approve the charge or a part of the charge for a deposition actually used or taken in good faith for testimonial purposes. Ordinarily, the matter is left to the discretion of the trial judge. 20 CJS 425, Costs § 194 a (1). The charge in the instant case was not authorized under ORS 20.020. The case ended on the demurrer and the deposition was merely part of the preparation by counsel. See *Macleay Estate Co. v. Miller*, 85 Or 623, 167 P 575. A deposition used solely for discovery is no more taxable as a disbursement than would be engineer studies, drawings, models, and the like, all "necessary" in the proper preparation of a client's case, but not taxable as disbursements under Oregon law. The rules of other jurisdictions provide otherwise, and citations of cases contra, based on such rules, afford little guidance.

The judgment of the lower court is modified to strike out $49.05 in disbursements for a deposition which was not used.

Affirmed as modified, with costs.