Argued March 7, affirmed in part; reversed in part and remanded July 19, 1973

BAUMBACH ET UX, *Respondents, v.* POOLE, *Appellant.*

511 P2d 1219

*Fred A. Granata,* Portland, argued the cause and filed briefs for appellant.

*William T. Powers,* of Powers, McKenna & Powers, Portland, argued the cause and filed a brief for respondents.

McALLISTER, J.

This is an action for trespass allegedly committed by defendant during the construction of a roadway on an easement over plaintiffs' property. The jury awarded plaintiffs $4,000 compensatory damages and $1,000 punitive damages. Defendant appeals. We reverse only as to the punitive damages.

The easement starts on the west at a public road and runs easterly through lands owned by persons not parties to this action, thence for about 1,450 feet through plaintiffs' land and ends on the east at the boundary of defendant's property. The easement was surveyed in 1959 and the survey filed with the county surveyor. The easement is described in defendant's deed as being 25 feet on either side of a described center line. Plaintiffs purchased their property on a contract which, after a description of the property, recited:

"TOGETHER with and SUBJECT to an easement

to be used in common with others over the 50 foot roadway as surveyed in July of 1959, file No. 3059, Clackamas County Surveyors Office, in the County of Clackamas and State of Oregon."

In 1969 defendant decided to subdivide his land and learned that in order to do so he would have to provide a better road than the one then in use which, for the most part, followed the surveyed easement referred to above. Defendant discussed with his neighbors the advisability of constructing a new road by using the old road in some areas, the easement in some areas, and a new route in some areas. He was unable to secure their consent however and decided to build a new road within the easement using some parts of the existing road which lay within the surveyed easement.

The complaint alleged that the trespass was intentional and malicious and damaged plaintiffs' property by removing lateral support, by constructing slopes that encroached on plaintiffs' land, by depositing fill and debris on plaintiffs' land, by causing surface water to accumulate on plaintiffs' property, by removing a number of trees from plaintiffs' land and by placing an unauthorized fence on plaintiffs' property. It was alleged that as a result of the trespasses the market value of plaintiffs' land was decreased by $7,675. Plaintiffs demanded that amount in compensatory damages and $5,000 in punitive damages.

■ The defendant first attempts to challenge the sufficiency of the evidence to support the verdict for compensatory damages by assigning as error the denial of his motion for judgment n.o.v. or for a new trial. This court has repeatedly held that the suf-

ficiency of the evidence to support a verdict cannot be raised for the first time by a motion for judgment n.o.v. or for a new trial, but must be raised during the trial by a motion for a nonsuit or by a motion for a directed verdict. See *Paul v. McCudden,* 256 Or 143, 471 P2d 437 (1970); *Clarizo v. Spada Distributing Co., Inc.,* 231 Or 516, 520-521, 373 P2d 689 (1962); *Schafer v. Fraser,* 206 Or 446, 489-490, 290 P2d 190, 294 P2d 609 (1955). Since the defendant did not move for a nonsuit or directed verdict we are unable to further consider this assignment of error.

However, because of the theory on which the case was tried in the court below, we think it well to point out that, even if properly raised, defendant's first assignment of error would have no merit. The case was tried on the theory that in constructing the road defendant was restricted to the fifty-foot easement. Defendant did not contend that he had a right to build a fifty-foot roadway and to also require plaintiffs, as the servient owners, to furnish slope easements or permit defendant to deposit surplus soil adjacent to the right of way.[1] This contention was mentioned for the first time in this court.

---

[1] As to the right of the owner of an easement to repair the easement, see, generally, 2 Thompson on Real Property 702-711, § 428 (1961 Replacement). The author states the basic principle to be that

> "* * * the person entitled to an easement has a legal right to maintain the property embraced by the easement to the extent necessary to permit its use for the purpose of the easement. An easement involves the right to repair it, and this necessarily includes the right to go upon the land of the servient owner for that purpose. The nature of the easement determines what the dominant owner may do in the way of repairing his easement." *Id.* at 703.

A number of cases hold that the owner of a roadway easement may, if reasonably necessary to the exercise of the rights con-

(Continued on page 158)

Assuming that defendant was restricted to the fifty-foot easement, as he conceded in the trial court, the evidence established that defendant invaded plain-

---

(Continued from page 157)

veyed by his grant, cut and grade in such a way as to interfere with natural drainage or lateral support on the servient estate. Guillet v. Livernois, 297 Mass 337, 8 NE2d 921, 112 ALR 1300 (1937); Rotch v. Livingston, 91 Me 461, 40 A 426 (1898); Williams v. Thompson, 152 Tex 270, 256 SW2d 399 (1953). But see Ballard v. Titus, 157 Cal 673, 110 P 118 (1910) where the court, relying on the precise terms of the conveyance, held that the reservation of a 30-foot right of way did not include the right to make changes in the servient estate outside the boundaries of the easement in order to build a 30-foot road. In Wheeler v. Wilder, 61 NH 1 (1881) it was held that the right to dig a canal a certain width naturally and necessarily included the right to leave the servient owner's property along the canal subject to erosion to some degree, and that it was a question of fact whether it was reasonable under the circumstances for the easement owner to leave the excavated dirt on the servient owner's land outside the boundaries of the canal easement.

Our own cases are few, but they have adopted the general rule that the grant of an easement includes the right to do whatever is necessary by way of repairs, even though damage to the servient estate may result. In Thompson v. Uglow, 4 Or 369 (1873) it was held that, if reasonably necessary to the enjoyment of the easement, the owner of a millrace easement would not be liable for having taken soil and turf from the servient estate to use in the repair of the millrace. The court said:

> "The general rule, that a party who has a right of enjoyment, has also a right to enter and make necessary repairs, is essential to the enjoyment of the thing granted. This right necessarily passes by the grant, otherwise it would be in the power of the grantor to virtually nullify and defeat his own deed, by depriving the grantee of the power to repair and use the thing granted. * * *
>
> "* * * The owner of the easement is privileged to repair in all cases where the easement cannot be enjoyed without repairs; and in making them, he may dig up the soil and otherwise use and encumber it, doing no more injury than is necessary when such course is indispensable to the enjoyment of the easement." 4 Or at 372-373.

The same principles were applied in Hotchkiss v. Young, 42 Or 446, 71 P 324 (1903) which involved the improvement of a roadway easement. The court found in that case that the proposed plan of improvement involved unnecessary interference with the servient estate.

tiffs' property in four areas—in two areas the slope of the cuts extended onto plaintiffs' land from two to seven feet and in two areas surplus soil was pushed outside the easement and down banks on plaintiffs' property adjoining the roadway. The survey map introduced by plaintiffs indicates that in one area the toe of the cut may have been slightly outside the easement line for a short distance. In extending the slopes onto plaintiffs' property about 25 small trees were removed. This and other evidence amply supported the judgment for compensatory damages and that aspect of the case needs no further consideration by this court.

We turn to the issue of punitive damages, which is the only issue seriously argued in this court. The defendant objected to the submission of this issue to the jury and the issue is properly before us. We have carefully reviewed the record and can find no evidence to suggest that any trespass by defendant on plaintiffs' land was intentional or activated by ill will or malice toward plaintiffs. On the contrary, it appears that defendant at all times believed that he was required to confine his construction activities within the fifty-foot easement and endeavored in good faith to do so.

Defendant hired an engineer to help him locate the boundaries of the easement. They located the monuments marking the easement and using those monuments as references located the center line of the easement. Wooden stakes were then placed along the boundary of the easement. Construction began in September 1969 and after a number of delays was finally completed in June of 1970. The road was built on a steep wooded hillside. Defendant's evidence

tended to prove that he and his employees and contractors endeavored at all times to stay within the confines of the easement and that any trespass was inadvertent. There was no evidence to the contrary. It was not determined that any of the cuts and fills encroached on plaintiffs' land until plaintiffs had the road surveyed after it was completed. In our view the trial court erred in submitting the issue of punitive damages to the jury and the award of punitive damages will be deleted from the judgment.

Defendant's contention that the court erred in failing to give one of his requested instructions is devoid of merit and deserves no consideration in this opinion.

Defendant objected to two items in plaintiffs' cost bill and the denial of those objections is assigned as error. The first is an item of $45.24 for a bus used for a jury view of the premises. ORS 20.020 provides for the allowance of "all necessary disbursements", which include, but are apparently not limited to, the specific items mentioned in the statute.[2] The jury view may be ordered when "in the opinion of the court, it is proper that the jury should have a view * * *." ORS 17.230. Defendant does not challenge the propriety of the jury view and we assume that the trial court believed the view would assist the jury to understand the evidence. In allowing the recovery of this item the trial court apparently determined that the

[2] ORS 20.020:

"A party entitled to costs shall also be allowed for all necessary disbursements, including the fees of officers and witnesses, the necessary expenses of taking depositions, the expense of publication of the summons or notices, and the postage where the same are served by mail, the compensation of referees, and the necessary expense of copying any public record, book or document used as evidence on the trial."

view was necessary within the meaning of the statute. We think the court did not err in allowing the cost of the jury view as a necessary disbursement.[3]

The second item to which defendant objected was a disbursement of $99.30 for taking depositions. As a general rule ORS 20.020 allows recovery of the necessary expense of depositions which are taken to preserve testimony, but does not allow recovery of the expense of taking discovery depositions. See *Kendall v. Curl,* 222 Or 329, 339-340, 353 P2d 227 (1960).

In the present case there is nothing in the record to indicate the original purpose of the depositions represented by the charge objected to. So far as we know, they were taken for discovery purposes only. No testimony was introduced by deposition at the trial. Here, as in *Kendall,* it appears that the charge was not authorized by the statute. The item for taking of depositions should have been disallowed by the trial court and will be deleted from the judgment.

The case is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

DENECKE, J., specially concurring.

I specially concur only to express my opinion that in discussing the issue of punitive damages we should adhere to the terminology selected in *Noe v. Kaiser*

[3] We have found only one case in which a similar expense was considered. Recovery was denied in Dewell v. Northern Pac. Ry Co., 45 Mont. 350, 170 P 753, 756 (1918). The applicable Montana statute, however, was more restrictive than ORS 20.020, permitting recovery only for specific items listed in the statute, and for items allowable under court rule or custom. See Montana O. P. Co. v. Boston & Montana Co., 27 Mont 288, 70 P 1114, 1126 (1902) construing the statute.

*Foundation Hospital,* 248 Or 420, 425, 435 P2d 306 (1967). "It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper." Stating that punitive damages should not have been awarded because there was no evidence that the conduct was "intentional or activated by ill will or malice toward plaintiffs" is in my opinion reverting to a nomenclature which we found in the *Noe* case to be insufficient to describe our reasoning.

O'CONNELL, C. J., joins in this specially concurring opinion.