## UNITED STATES v. GURLEY et al.

(District Court, N. D. Georgia. February 28, 1922.)

Woods and forests ⬅5—Regulations governing national forests are paramount and exclude inconsistent state laws.

Under Const. art. 4, § 3, vesting Congress with power to "make all needful rules and regulations respecting the territory or other property belonging to the United States," regulations prescribed by Congress, or by a department under its authority, respecting a national forest reservation within a state, whether on the public domain or on lands acquired for the purpose, are paramount, and where such regulations prohibit the general grazing of live stock on lands of the reservation, they exclude from operation as to such lands a state statute providing that the owner of animals shall not be liable for their trespass on lands not inclosed by a lawful fence.

In Equity. Suit by the United States against M. J. Gurley and others. Decree for complainant.

R. W. Williams, Solicitor of U. S. Dept. of Agriculture, of Washington, D. C., and J. W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for the United States.

Hendrix & Buchanan and Homer C. Denton, all of Atlanta, Ga., for defendants.

SIBLEY, District Judge. The equity jurisdiction touching a multiplicity of suits affecting a common right to be established against many is, I think, sufficiently sustained. The position taken by the United States for remedy by injunction is weak, but considering the fact that all parties seem to desire to know what their rights are in the premises, and that it is really a test suit suggested by one or more of the defendants, I think it ought to be fully decided, and no quibble made touching the remedy.

The law of Georgia provides what shall be a lawful fence, and then, in section 2025, Civ. Code 1910, declares that the owner of any animal trespassing upon any other person's land shall not be liable for damages done, unless the land is protected by a lawful fence, and prohibits the owner of the land from killing the trespassing animal. The defendants contend that this law of Georgia is applicable to federal forest reserves, and the government contends the contrary—that the federal forest reserve is to be governed by regulations that are provided for by Congress.

The question was dealt with by the Constitution. The Constitution (article 4, § 3) provides that Congress shall have power to make all needful regulations touching the territory and property of the United States. The state of Georgia agreed to this, as, of course, did all other states becoming members of the Union afterwards. At that time the United States owned vast territories not in any state, and doubtless also owned lands and other property within states. They have since acquired very many other such territories and a very great quantity of such property. The needful regulations applicable to the territories outside of a state have gone to the extent of providing governments for them. Porto Rico, Philippine Islands, Alaska, the District of Columbia, are all governed to-day by virtue of this provision of the Constitution.

Land or other property within a state has not ordinarily found any such extensive regulations needful, within the meaning of the Constitution; but the Congress still has the power, under the supreme law of the land, to make such regulations as are needful, Congress being the judge of what is needful. It is probable that it is the exclusive judge of what is needful. Certainly any regulation looking to the use or disposal or the safety of the property is needful, if Congress so conceives it. It is well settled that Congress, in making regulations, may not only deal with them itself, but may, after providing a general scheme, delegate the details to some officer or commission.

This has been done with reference to the property involved in this present case. The general scheme of acquiring lands within states, and retaining and using them for the development and preservation of forests and for the supply of navigable streams, is set forth in the congressional statute; but the working out of the details of the uses that are consistent with this general scheme are now left to the Secretary of Agriculture. His regulations, having that thing in view and reasonably adapted to it, are the regulations of Congress, and must be allowed to govern the property of the United States so situated.

Now these regulations have expressly provided that the state law shall, to a certain extent, remain of force as to persons within the reservations. By a necessary implication the state laws are not to remain of force otherwise, and all dealings with the property itself, almost in the nature of the case, must be under federal regulation. I think, in view of the evident tendency of uncontrolled grazing of the forests, that may be carried to the extent of not only ruining the forest, but also to denude the lands both of grass and undergrowth, so that it would not properly retain the rainfall, but would discharge it in floods in rivers below, there are required regulations of the sort the Secretary of Agriculture has undertaken. It is true that the particular situation disclosed here and the conduct of the particular animals involved here does not seem to involve any such consequences; but the validity and force of the regulations must be tested by the possibilities and likelihoods that may arise, rather than by the particular case that is now before the court. I think those regulations are wise. I think they are indispensable and proper. It would not be for the court to say what they ought to be; that, of course, is for the Secretary of

Agriculture. I mean simply to say that they seem to me to be within his power, as delegated by Congress.

Now the result of it is that the Georgia statute, requiring a fence of a certain sort to be erected if the owner of the land desires to avoid the trespass of animals, cannot be applied to property of the United States, when the United States, by regulations, have provided otherwise. The result of it is that, if cattle belonging to citizens of Georgia get upon land of the United States, they go, not subject to the law of Georgia, but to the regulations of Congress. The general law would seem to apply, except as altered by the Congress. My recollection of the common law is that a trespassing animal does not commit his owner absolutely for the damages done, but the liability of the owner depends on negligence. As I recall the law, if the tendencies and proclivities of the animal were known to the owner, its inclination to wander and trespass upon another's property and there do damage to somebody else, he is liable; otherwise, he is not. For the mere escape of animals from confinement, or the first manifestation of hurtful tendencies, the owner is not liable. He is not liable until he has done or omitted to do something a person in the exercise of ordinary care and diligence would not have done or omitted. I suspect that is the law as to damages by animals trespassing on federal domain. It is not a defense for one to say, "You have not got a lawful fence under the law of Georgia," nor, on the other hand, does it make a case for damages for the government to say, "Your animals got on my land;" but there must be either evidence of willfulness or negligence after notice and knowledge of the likelihood of the thing happening to make liability.

Of course, regulations doubtless could extend to the point of taking up animals found trespassing on the public domain and dealing with them in any reasonable way. No regulation has been read touching that, however. I think that, as the regulations stand, they permit citizens residing on the reservation, or within it, or adjacent to it, to let their domestic animals to the number of 10 run at large, and that they are not violating any regulation if those animals get upon the government property. I think those who have more domestic animals than that number, or who have animals that are not for domestic use, within the language of the regulation, who turn their animals at large, take the risk of being held in damages or otherwise for the depredations of the animal. I suspect, as good citizens, that they would wish to comply with whatever their duty is, and it seems to me that the practical thing for every one to do is, at each stated period, to have an understanding with the patrols of the forest as to what domestic animals he has, and that he claims the right to let run at large without permit, and settle it beforehand, so that there will be no misunderstanding or friction about it. If any one has a lot of other animals running at large, which may likely go upon the government range, I think that he ought to either get a permit that would justify them going there, or else he would certainly take the risk of them doing what they may naturally be expected to do, together with the embarrassment, perhaps

expense, resulting from it. It is best to avoid all those things by an arrangement before hand.

The decision in this case is, looking to the real object of the suit, that an injunction should issue against all except Brookshire. I think there is some foundation for the complaint made as to all the others, in the way of making a test, or for some other purpose, that might properly be met by an injunction; but as to him, while there is evidence that he raised cattle for market, I do not think there is any real indication that he has been running any on the government range contrary to government regulations. I think that all his animals spoken of, except the steer that met an untimely end, were domestic animals, to be used, or that were used for domestic purposes. The heifer that was being kept until she came into milk was within the regulation, and so was the dry milk cow that was being ranged until she came back into milk. I do not think the evidence requires a contrary conclusion, for as to those things the burden would be on the government. The injunction ought to be against defendants turning their cattle upon the government reservation, of course driving them there, or permitting them to range there, contrary to the regulations. Of course they would not be in contempt of court for their cattle going there, unless it was fairly shown that their purpose was to disobey the injunction of the court in that respect. An accident would not be contempt of court. But I think the practical way to handle the situation is the one I have indicated, for each party to ascertain what rights they really have under the law, and try to observe them and keep out of misunderstandings about it.

You may frame an injunction accordingly. I omitted to say I think the government ought to pay the costs of this case. The matter does not disclose, with one possible exception, any willfulness or recalcitrance or indifference to the regulations.

### Decree.

This cause came on to be heard at this term, and was argued by counsel; and thereupon upon consideration thereof it is ordered, adjudged and decreed, that the defendants, M. J. Gurley, Reed Cavender, Fred Cavender and Boyd Jones, their agents, servants and employees, and each of them, unless when acting in compliance with the rules and regulations promulgated by the Secretary of Agriculture of the United States relating to the use of National Forests for grazing stock, be and they are hereby forever and perpetually enjoined and restrained from in any manner causing any cattle or other live stock, whether owned by them or either of them, or by another or others, to go or graze upon the lands of the United States, situated in the counties of Fannin, Union, Towns and Lumpkin, in the State of Georgia, designated and known as "Cherokee National Forest," or upon any part thereof, and from in any manner permitting any cattle or other live stock, owned by or in the care, custody or control of them, or any of them, to stray, drift, go or graze upon the aforesaid lands, or any part thereof; and from aiding, advising or counseling any person or persons to cause or permit any cattle or other live stock in the care,

custody or control of such person or persons to go or graze upon the aforesaid lands, or any part thereof in any manner not authorized and permitted by the said Secretary of Agriculture in the rules and regulations promulgated by him relating to the use of National Forests for grazing stock.

Injunction is denied as to H. H. Brookshier.