## UNITED STATES v. JOHNSTON et al.

### No. 4.

District Court, S. D. West Virginia, At Lewisburg.

March 4, 1941.

Lemuel R. Via, U. S. Atty., of Huntington, W. Va., and Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., for plaintiff.

Summers H. Sharp, of Marlinton, W. Va., for defendants.

McCLINTIC, District Judge.

The United States of America, as a corporation sovereign and body politic, instituted a civil action in this court against Sol H. Johnston, Mrs. Sol H. Johnston, Mrs. Mona Bowling and Cletis Johnston, praying that these defendants be permanently enjoined, inhibited and restrained from further trespassing upon certain lands owned by the United States of America, called the Monongahela National Forest, and situate in Pocahontas County, West Virginia, within this district.

The complaint set out the title to the lands claimed to be trespassed upon, the possession thereof by the plaintiff, the laws of the United States relative thereto, and the regulations made by the Secretary of Agriculture in pursuance of such

laws for the protection of the forest from depredations and fire.

The complaint also charged the defendants, and especially the defendant, Sol H. Johnston, with causing irreparable damage to the freehold and lands of the plaintiff because he permitted and caused the cattle, sheep and horses, owned by him and in his control, to graze and forage upon and over a part of the said Monongahela National Forest, and defied the officers and agents of the plaintiff to prevent the trespassing of these animals upon the lands of the United States.

The defendants answered and admitted, either in their answer or by stipulations in the evidence, the allegations of the bill, except the defendants averred that the rules, regulations and provisions set out in the bill as having been promulgated by the Secretary of Agriculture were unreasonable and unenforceable and did not have the effect of law, and further averred that the enforcement of such rules, regulations and provisions would be tantamount to the confiscation of the properties of these defendants by the plaintiff without just compensation therefor.

The defendants further averred that they had not committed the acts of defying the officers of the United States as claimed by the plaintiff, and further averred that they owned about seven hundred acres of land adjoining the lands of the plaintiff, and that of this amount about five hundred and thirty-six acres of their land were not fenced, but lay outside of their enclosure, and further averred that it would not be just to deny the defendants the right to use their lands in a lawful way, such as grazing their own stock thereon, and that they were willing to build their part of the fence between the lands of the plaintiff and the defendants as required by the laws of the State of West Virginia, and further averred that it would not be just to them for the plaintiff to require the defendants to build the whole of the fence at the expense of the defendants.

It was stipulated between the parties that the questions of fact stated in the bill of complaint, except as to paragraph eight, were agreed to. (Paragraph eight related to the allegations of damage to the freehold.) It was further stipulated that the plaintiff owned the lands claimed by it and that the defendants owned the lands, being proved to be six hundred and ninety-two acres, as claimed by them.

Evidence of witnesses was then taken, which evidence proved that the defendants owned about sixty-five sheep, eighteen cows and seven horses, which it was their custom to graze on the lands of the defendants outside of their enclosure, except at times when only part of the horses were turned out to graze thereon.

It was proven that the five hundred and thirty-six acres of defendants' lands, not enclosed, were joined on three sides with the lands of the plaintiff.

It was further proven that the plaintiff was reforesting a part of its lands by the planting of small trees thereon, and it was further proven that the stock of the defendants, while turned out by them upon their own lands, would stray over onto the lands of the plaintiff, and that there were unpleasant dealings between the agents of the plaintiff and the defendants relative to this trespassing of the stock of the defendants upon the lands of the plaintiff. There were some unnecessary actions on the part of the agents of the plaintiff in driving some of the defendants' sheep a long distance away from the lands of the defendants, and which sheep perished without any knowledge of the defendants as to what had become of them.

The Congress has declared the purposes for which national forests are established to be to improve and protect the forest within the reservation, and for the purpose of securing favorable condition of water flows, and to furnish a continuous supply of timber for the use and necessities of the citizens of the United States. 16 U.S.C.A. § 475.

The Congress authorized the Secretary of Agriculture to make such rules and regulations as would be necessary to insure the objects for the creation of such reservations, and the Congress made the violation of such rules and regulations a penal offense.

Section 551 of 16 U.S.C.A. is as follows: "The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and es-

tablish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this act [sections 473–482 of this title] or such rules and regulation shall be punished as is provided for in the act of June 4, 1888, amending section 3388 of the Revised Statutes of the United States [section 104 of Title 18]."

Pursuant to the authority hereby given, the Secretary of Agriculture promulgated certain rules and regulations, as follows:

"Reg. T–6. The following acts are prohibited on lands of the United States within national forests:

"(A) The grazing upon or driving across any national forest of any livestock without permit, except such stock as are specifically exempted from permit, by the regulations of the Secretary of Agriculture, or the grazing upon or driving across any national forest of any livestock in violation of the terms of a permit.

"(B) The grazing of stock upon national forest land within an area closed to the grazing of that class of stock.

"(C) The grazing of stock by a permittee upon an area withdrawn from use for grazing purposes to protect it from damage by reason of the improper handling of the stock, after the receipt of notice from an authorized forest officer of such withdrawal and of the amendment of the grazing permit.

"(D) Allowing stock not exempt from permit to drift and graze on a national forest without permit.

"(E) Violation of any of the terms of a grazing or crossing permit.

"(F) Refusal to remove stock upon instructions from an authorized forest officer when an injury is being done the national forest by reason of improper handling of the stock."

Further regulations were made in reference to permits which were not applicable to the case at bar.

■ It is well settled by numerous decisions of the courts that a regulation promulgated by a Department of Government, addressed to and reasonably adapted to the enforcement of an Act of Congress, the administration of which is confided to such Department, has the force and effect of law if it be not in conflict with express statutory provision. Maryland Casualty Company v. United States, 251 U.S. 342, 343, 40 S.Ct. 155, 64 L.Ed. 297; United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Smull, 236 U.S. 405, 409, 411, 35 S.Ct. 349, 59 L.Ed. 641; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926.

The question whether the lands of the United States are subject to the fence laws of West Virginia, Code W.Va.1937, § 2114 et seq., arises here, and it is claimed by the defendants that it does apply in the instant case. If the law did apply, the defendants would have to build one-half of the needed fence to enclose their lands where they adjoin the lands of the United States, and the plaintiff would have to build the other half.

The defendants claim that it is taking their property without compensation when they are not permitted to use their lands in the manner desired by them and in which they are entitled to use them, under the laws of the State of West Virginia.

■ I am regretfully compelled to hold that these positions on the part of the defendants are untenable.

■ Under the Constitution of the United States, when certain conditions are complied with, which has been done in this case, the Government of the United States is entitled to own lands and the laws of the United States alone apply to such ownership, and there is no law passed by Congress requiring the plaintiff to fence its lands.

■ The plaintiff, as a sovereign, has a right to make its own rules and regulations as to the use and control of its own lands, and however hard and unjust it may seem to be to the citizens owning lands adjoining those of the plaintiff, they must comply with those rules and regulations.

■ The constitutionality of the right of Congress to delegate to the Secretary of Agriculture the authority to make rules and regulations has been upheld by the Supreme Court in more than one case. See United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, and Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570.

These two cases simply affirm the doctrine as set out in the case of Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260.

In the case of Shannon v. United States, 9 Cir., 160 F. 870, it was specifically held,

in a case arising in the State of Montana, that the Federal Constitution delegated to Congress the general power absolutely and without limitation to dispose of and make all needful rules and regulations concerning the public domain independent of the locality of the land, whether situated in a state or territory, the exercise of which power cannot be restrained in any degree by state legislation.

In this case it was further held that public lands in the State of Montana were not subject to the stock and fence laws of the state, which were only applicable to lands subject to the state's dominion.

This opinion was rendered by the Circuit Court of Appeals for the Ninth Circuit.

Later, the District Court for the Northern District of Georgia held, in the case of United States v. Gurley, 279 F. 874, as follows:

"Woods and forests * * *—Regulations governing national forests are paramount and exclude inconsistent state laws.

"Under Const. art 4, § 3, vesting Congress with power to 'make all needful rules and regulations respecting the territory or other property belonging to the United States,' regulations prescribed by Congress, or by a department under its authority, respecting a national forest reservation within a state, whether on the public domain or on lands acquired for the purpose, are paramount, and where such regulations prohibit the general grazing of live stock on lands of the reservation, they exclude from operation as to such lands a state statute providing that the owner of animals shall not be liable for their trespass on lands not inclosed by a lawful fence."

Injunctions were sought in the two latter cases, above mentioned, and in each case an injunction was granted restraining individuals from permitting their stock to go upon the lands of the United States.

I personally know of instances in West Virginia where permits have been given to graze stock upon the lands of the United States and such stock has trespassed upon the lands owned by citizens, but apparently the only remedy the citizens have is to fence their lands against the intrusion of such permitted grazing of stock, under the laws of the United States. This is a situation which should be remedied, but it can only be done by an act of Congress.

Therefore, the injunction prayed for herein will be granted.

A proper order should be drawn.