**UNITED STATES v. TRAVIS.**
No. 370.

District Court, W. D. Kentucky, at Paducah.
June 19, 1946.

David C. Walls, U. S. Atty., and A. Roy Copeland, Asst. U. S. Atty., both of Louisville, Ky., for plaintiff.

James A. Vinson, of Eddyville, Ky., and C. C. Molloy, of Kuttawa, Ky., for defendant.

SHELBOURNE, District Judge.

The Kentucky Woodlands Wildlife Refuge was created by Executive Order Number 7966 dated August 30, 1938, as a Refuge and breeding grounds for birds and wildlife.

The territory presently comprising the Refuge lies partly in Lyon County and partly in Trigg County, and embraces approximately 50,000 acres acquired by the government, according to a stipulation of facts filed in this action, in various amounts and at various dates between June 1935 and November 1944.

The various statutes authorizing the acquisition of the acreage are set out by reference in the stipulation. Defendant does not question the legality of the acquisition.

The portions of the Refuge located in the Counties of Lyon and Trigg are in Magisterial Districts in which it is lawful to permit livestock to run at large. Elections, as provided by Section 259.030 Kentucky Revised Statutes, have been held in each of the Magisterial Districts, and in both elections the majority of votes was cast to permit livestock to run at large.

Defendant, Holloway Travis, a resident of Lyon County, owns a farm in the Magisterial District wherein lies that portion of the Refuge in Lyon County. Defendant resides upon his farm which is partly fenced and partly unenclosed. He permits his livestock to graze upon his lands and the stock, unrestrained by fences, stray onto the lands comprising the Refuge.

The Secretary of the Interior issued regulations for the administration of National Wildlife Refuges, the portions of which pertinent to this action, are:

"Sec. 12.2 [Code of Federal Regulations Title 50]. Entry upon refuges. Entry upon refuges unless otherwise provided shall be only under appropriate permit issued for the purpose * * *"

"Sec. 12.7. Domestic animals. The ranging of cattle or other domestic stock or the running at large of dogs or cats upon a refuge or the entry of any such animals upon a refuge for any purpose except as specifically authorized under the sections in this part is not permitted."

"Sec. 16.3. Grazing. No cattle, sheep, horses, or other livestock are permitted to graze on the public lands within the exterior boundaries of such game ranges, or refuges, except under permit of the Secretary of the Interior and in accordance with such conditions as he may prescribe therein and no grazing is permitted on lands within the exterior boundaries of such game ranges or refuges, which have been or which hereafter may be acquired by the United States for the use of the Department of Agriculture for the conservation of migratory birds and other wildlife, except under permit of the Secretary of Agriculture and in accordance with such conditions as he may prescribe therein."

This action was filed by the United States demanding an injunction against defendant permitting his stock to graze upon the Refuge.

In the stipulation, it is agreed that at times the defendant has and does permit his livestock to "run outside and at large and said stock of their own volition, did go upon said lands owned by plaintiff * * *"

Defendant contends that the government owns the lands "in a private or proprietary and not a governmental capacity, has no governmental control, jurisdiction or authority thereof, and that no valid, legal and enforcible law or rule making it unlawful for his livestock to go upon said lands was in force and effect * * *."

The government contends that the Regulation is valid and effective to prevent cattle and domestic animals to run at large upon the lands comprising the Refuge.

To grant the demands of the government will, as his counsel has earnestly contended, deny to defendant and other residents and stock raisers near the Refuge a benefit which they have long enjoyed by custom and agreement among themselves. A large section of land, including the Refuge, is enclosed on the North and East by the Cumberland River and on the West by the Tennessee River. With the three sides enclosed by these natural boundaries, by fencing one side only, the owners permit their stock to graze over the entire area, during the portion of the years between the harvesting of crops and the succeeding planting season. This provides a common benefit of great value without disadvantages to any of them. This custom having prevailed for many years, they feel they should not be denied the benefit they derive and assert that the government should be required to protect the Refuge against grazing stock by fencing.

Counsel for defendant has not pointed out any lack of authority in the government to acquire the lands comprising the Refuge. The Migratory Conservation Act, Title 16 U.S.C.A. Sec. 715 et seq. provides the authority.

The General Assembly of Kentucky at its 1942 Session approved the acquisition by the United States of such areas in Kentucky as the Federal Government deemed necessary for the establishment of migratory bird reservations in accordance with the Migratory Bird Conservation Act, and reserved over such areas only such jurisdiction and authority as was compatible with the administration, maintenance, protection and control thereof by the United States under the Federal Act. KRS Sec. 150.270.

Section 715i, Title 16 U.S.C.A., part of the Migratory Bird Conservation Act, confers upon the Secretary of the Interior powers deemed necessary for the protection of the area by Regulations.

The validity of similar Regulations issued by the Administrative officers under statutes very similar to the one here involved was unheld by Judge Ford in Shouse v. Moore, D.C., 11 F.Supp. 784, and by

Judge Miller later in United States v. Schultze, D.C., 28 F.Supp. 234. In both opinions reference is made to United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, holding that authority to make administrative rules is not a delegation of legislative power. Such Regulations have equal dignity with law—in effect, they become law when premulgated.

■ A regulation similar to the one in the present case and issued by the same administrative officer to prohibit grazing of cattle on a Forest Reserve was involved in the case of Shannon v. United States, 9 Cir., 160 F. 870, 873. The government sought to enjoin a defendant who owned 320 acres of land adjoining the Reserve from the practice of driving bands of cattle within the 320 acres which were enclosed on three sides but open on the side toward the Reserve and leaving them, knowing the cattle would invade the Reserve. There, as here, defendant claimed his right to permit his cattle to run at large under the provision of the Laws of the State of Montana and claimed support for this contention in a custom shown to have existed "from the beginning of the government" under which citizens had been permitted to pasture on public lands. The Court there said concerning Sub-section 2, Section 3, Article 4 of the Federal Constitution:

"The federal Constitution delegates to Congress, absolutely and without limitations, the general power to dispose of and make all needful rules and regulations concerning the public domain, and this, independently of the locality of the public land, whether it be situated in a state or in a territory. Irvine v. Marshall, 20 How. 558, 15 L.Ed. 994; Jourdan v. Barrett, 4 How. 169, 11 L.Ed. 924; United States v. Gratict, 14 Pet. 526, 538, 10 L.Ed. 573; Gibson v. Chouteau, 13 Wall. [92], 99, 20 L.Ed. 534. The exercise of that power cannot be restricted or embarrassed in any degree by state legislation."

Denying defendant's right to rely upon the law of the state permitting stock to run at large the Court said:

"It could not give to the people of that state the right to pasture cattle upon the public domain, or in any way to use the same. Its own laws in regard to fencing and pasturing cattle at large must be held to apply only to land subject to its own dominion. No one within the state can claim any right in the public land by virtue of such a statute. The United States have the unlimited right to control the occupation of the public lands, and no obligation to fence these lands, or to join with others in fencing them for the purpose of protecting its rights can be imposed by a state. The rights given by the state statutes to the subjects of the state extend only to the lands of the state. They end at the borders of the government lands. At that border the laws of the United States intervene, and it is within their province to forbid trespass. Such laws being within the power of Congress, it is not necessary to discuss the question whether it is sovereign power or police power, of what may be its nature, for there is no power vested in the state which can embarrass or interfere with its exercise."

The cases of United States v. Johnston et al., D.C.W.Va., 38 F.Supp. 4, and United States v. Thompson, D.C.Wash., 41 F.Supp. 13, are strikingly similar in facts involved with the present case.

The powers of the Administrative Officer upon whom Congress confers authority to issue regulations in protection of migratory birds are shown in the case of Bailey v. Holland, 4 Cir., 126 F.2d 317, to prohibit hunting wild fowl outside the boundaries of a Refuge.

■ This Court is aware of the fact that compelling defendant and other property owners similarly situated to enclose their lands in order to get the benefit of pasturage on their own lands will entail upon the parties a hardship. This apparent hardship was noticed by the Court in the case of United States v. Johnston supra, where the court said [38 F.Supp. 7]:

"This is a situation which should be remedied, but it can only be done by an act of Congress."

This Court has jurisdiction of the parties and subject matter by virtue of Title 28 U.S.C.A. § 41, Sub-section 1, and the Court finds that plaintiff is entitled to the injunction sought.

416

The findings of fact are as stated in the stipulation signed by the parties and as in this memorandum set forth. Should either party desire further or more specific findings of fact, they will submit proposal findings of fact on or before July 1st, at which time the injunction herein granted will become effective.